CASE No. 828.

ADRIAN & VOLLERS v. LANE.

1. That one acted as agent in selling a tract of land, raises no presumption that he has power, after the contract is executed, to rescind the sale, or to materially modify its terms.

2. A covenated with B to deliver seven bales of cotton, in installments, the consideration of which was a parol promise by B to give to A, after the delivery of the cotton, a warranty title to a tract of land. *Held*, that the covenant to deliver was not dependent upon the promise to convey.

Before KERSHAW, J., Darlington, October, 1879.

Action by Adrian & Vollers *v.* Stephen Lane, commenced December 31st, 1878. The case is fully stated in the judgment of the Circuit Court, which is as follows:

This action was for recovery of $500 damages for the non-performance of two contracts, under seal, dated February 16th, 1876, whereby defendant covenanted with plaintiffs (of Wilmington, N. C.,) to deliver to them, at Cartersville, S. C., four bales of cotton, of four hundred and fifty pounds each, by November 1st, 1876, and three bales of like weight by November 1st, 1877. The defendant admitted the contracts as set forth, and their non-performance, but set up as a defence thereto, that the consideration was a parol undertaking to sell to the defendant six hundred acres of land, and make warranty title when the price should be paid; that defendant was soon warned not to take possession of said land, by a party claiming title, whereupon he went to the agent of the plaintiffs, who first nego-tiated the contract, and, being informed by said agent that the plaintiffs would not give the warranty title first agreed upon, notified him that he would no longer recognize his obligation to the plaintiffs.

The case, by consent of parties, was heard by the court.

The defendant was permitted to open and close.

The defence proved that the obligations were given for the purchase of six hundred acres of land from the plaintiffs, who

were to give defendant good title when the obligation was paid ; that the negotiations were with an agent of plaintiffs; that very soon, and before defendant had taken possession, he was warned by one claiming title, not to take possession ; that bringing the matters to the notice of the said agent, he informed defendant that plaintiffs would not give the warranty title first agreed upon, and defendant then gave notice that he would not fulfill his obligations, or have anything more to do with the matter ; that defendant never took possession, and plaintiffs have not proposed to make titles upon receipt of the amount stipulated. The defence also proved outstanding paramount title to the land which was the subject of this contract, in another party. The plaintiffs offered no testimony, but insisted, as a matter of law, that the defendant was bound to fulfil his obligations before he could claim the performance of the plaintiffs ; that the covenants of the parties were distinct and independent of each other.

Finding the facts in accordance with the above-recited proofs, it is my judgment, as a matter of fact, that the obligations of the parties were mutual and dependent on each other ; that the plaintiffs, subsequent to the making of the contract, distinctly disclaimed their purpose to perform their part of the contract, that defendant was not put in possession under his purchase, and never had possession ; and that there was paramount outstanding title. And, as matter of law, upon this state of facts, I am of the opinion that the defendant may plead outstanding paramount title in another as a successful defence to the plaintiffs' action upon these obligations for the purchase money.

It is therefore ordered that the defendant have judgment for his costs and disbursements to be entered by the clerk of this court.

Plaintiffs appealed.

*Mr. G. W. Dargan,* for appellant.

*First.* The declarations of Andrews, subsequent to the execution of the contracts, were admitted in evidence. There is no presumption that an agent to sell has power to rescind. *Unless the contrary appears, the presumption is that an agent to sell has no power to rescind.* 1 *Bail.* 648. See, also, 2 *Rich.* 470 ; 4

*Strob.* 100; 4 *Strob.* 427; 6 *Rich.* 221; 7 *Rich.* 528; 10 *Rich.* 332, as illustrating the indisposition of our courts to enlarge the implied powers of agents even where the interests of third parties are involved. See, also, 1 *Pars. on Cont.*, *58, *et seq.*, *and notes;* 5 *Wheat.* 326. Assuming that the agency of Andrews had not terminated at the time the alleged declarations were made, it does not follow that *every* declaration made by him in regard to the subject matter in controversy, is binding upon his principal. The declarations of an agent are binding upon the principal only when made *as agent, viz., in the discharge of the functions devolved upon him by his agency.* In order to bind, declarations must form a part of the *res gestæ.* 1 *Mills' Const. R.* 409; 1 *Greenl. on Ev.*, §§ 113, 114, 115, *and notes.*

From aught that appears to the contrary in this case, Andrews may have spoken simply as an individual, unofficially, and have expressed only his own opinion.

*Second.* Assuming that the defendant is not discharged, the next inquiry is as to the nature of said contracts.

The promise of the plaintiff to make title *after* the payment of the obligations of the defendant, cannot fail until the defendant has first performed his duty. The defendant's liability is to be measured by the terms of his agreement. And the pleadings and evidence showing that the plaintiffs were not to perform their said promise until *after* the defendant had discharged his said obligations, it is respectfully submitted that there was error in holding that the obligation of the defendant was mutual and dependent, and *not independent.* 2 *Pars. on Cont.* *527, *et seq.*, *and notes;* 1 *Bail.* 217; 2 *Mills' Const. R.* 56; 42 *Miss.* 405; 2 *Am. R.* 601; *Id.* 671; 42 *Miss.* 797.

*Third.* Assuming that the evidence at the trial showed paramount outstanding title in a third party, the defendant is not absolved from his obligations. According to his own evidence, the plaintiffs did not claim to have title when they contracted with him. *He made no inquiry* in regard to their title, but executed said obligations, *relying upon the promise of plaintiffs to make titles when the notes were paid.*

*Fourth.* Its terms being ascertained, the construction of a contract is a question of law. 2 *Pars. on Cont.* *492, *et seq.*, *and notes.*

*Mr. B. W. Edwards*, contra.

*First.* If the agent, who transacted the whole matter, acted by authority at any time, he so acted all the time. He stood between the defendant (who knew no one else in the matter) and his principals, and they are bound by all his acts and declarations. For aught we have of proof, his repudiation of the contract after it was made may have been by special instructions from them. This suggestion receives support from the fact that plaintiffs only bring suit after his mouth is closed, more than a year after the time fixed for the final discharge of defendant's obligations.

That the communication to the defendant of the plaintiffs' purpose not to comply with their contract, and his discovery of their inability to do so, justified him in treating the whole contract as broken—especially as he so notified them through their agent. This doctrine is strongly implied in 33 *Ind.* 54, (reported in 5 *Am. R.* 477.) And a similar principle underlies the doctrine of the entirety of a contract so abundant in our reports. See 37 *Ind.* 1, (reported in 10 *Am. R.* 62.) So the false representation of plaintiffs as to their right to convey, implied in their promise to convey with warranty, was sufficient to justify the defendant in denying his further liability, when the misrepresentation was discovered, and is a good defence to the action.

*Second.* The covenants between these parties were mutually dependent, and that the plaintiffs cannot recover without proving at least a tender of performance.

This is a question of intent and meaning; and, perhaps, more a question of fact than of law. If so, the presiding judge has found the fact, and this court will not disturb the finding. It is true that the defendant said " the notes were first to be paid, and then titles were to be made." But this was only a form of statement; that titles were not to be made *before* " the notes " were paid.

The testimony was, as stated by the judge, that the title was to be given *when* the obligation was paid. It is evident that this is the true construction, from the fact that the covenants of the contracting parties are evidenced by one instrument only, and the consideration of that agreement, which rests in parol, is the cove-

nant of the plaintiffs. See 2 *Mills' Const. R.* 56, and particularly 42 *Miss.* 797, (reported in 2 *Am. R.* 671.)

· March 12th, 1880.   The opinion of the court was delivered by

McIVER, A. J.   This was an action to recover damages for the breach of two contracts, under seal, executed on the same day, whereby the defendant promised, in one of the said contracts, to deliver to the plaintiffs, at a specified place, four bales of cotton, of a specified weight and quality, on November 1st, 1876, and the other promised to deliver to the plaintiffs, at the same place, three bales of cotton, of like weight and quality, on November 1st, 1877.   The defendant, in his answer, admitted the execution of the said contracts, which are spoken of in the testimony as notes, and the non-performance of the same, but set up as a defence the following : "That said contracts were negotiated with one Col. Andrews, who represented himself as acting for the plaintiffs, and that the consideration was a verbal promise or undertaking that plaintiffs would make titles to defendant of a tract of land in said county of six hundred acres, more or less, and warrant and defend the same unto defendant when payment was made ; that soon after the making of said contracts, defendant was notified by another claimant that he had paramount titles to said land, and was warned not to take possession upon pain of being treated as a trespasser ; that thereupon defendant declined to take possession of said land, and refused to pay the amount stipulated without better assurances, which plaintiffs declined to give, and the said Andrews, for the plaintiffs, notified defendant that the plaintiffs would not give title with the guaranties first stipulated ; that the refusal and inability of plaintiffs to make good and sufficient titles to said land absolved defendant from his obligation—never having been in possession ; that defendant is willing, and has ever been, to pay the price stipulated for said land, provided the same can be confirmed to him by unshadowed titles, which plaintiffs have never tendered and which defendant denies they are able to give, and defendant challenges title in plaintiffs at all."   It will be observed that there is no allegation and there was no proof that the plaintiffs undertook to deliver possession of the land to the defendant.   For

aught that appears it may be that the defendant bought at a risk and knew that he was so buying. Indeed, if we may be allowed to conjecture upon the subject, it would seem from the price agreed to be paid that the land must either have been of a very inferior quality, or that the uncertainty as to the title and the difficulty of obtaining possession very materially reduced its market value. Be that as it may, however, as in the absence of any proof upon the subject, we have no means of determining which would be the correct inference, there is one thing very certain, and that is that all the plaintiffs covenanted on their part to do was to give warranty titles for the land *after* the notes (so called) were paid ; the language of defendant, in his own testimony, being : " The consideration of the said contracts was a verbal promise to convey, with warranty as to title, a certain tract of wood and swamp land when the notes were paid ; that the notes were first to be paid, and then titles were to be made." Now, there is no evidence whatever to show that the plaintiffs have ever refused, or declared their purpose to refuse, to give the warranty titles agreed upon, except that which is supposed to be derived from the declarations of Andrews, which will be presently considered ; nor is there any evidence to show that the defendant has ever notified the plaintiffs of their inability to obtain possession of the land, or called upon them to make good their agreement to warrant the title. But defendant relies solely upon proof of certain declarations of Andrews, who was dead at the time of the trial, alleged to have been made a short time after the execution of said contracts, to the effect " that the plaintiffs would not make warranty title as originally promised." This testimony was objected to by the plaintiffs, upon the ground that no declaration of Andrews made subsequent to the execution of the contracts sued upon, would be competent until it was shown that, at the time such declarations were made, Andrews was acting as the agent of the plaintiffs and speaking by their authority. The Circuit judge ruled " that, inasmuch as Andrews had negotiated the original contract, the presumption was that his authority as to the matter continued until the contract was executed or consummated, and therefore his declarations were admissible." To this ruling the plaintiffs excepted, and this raises the first ques-

tion for our consideration. We think the exception was well taken. The rule that there is no presumption that an agent to sell has power to rescind the sale or materially modify its terms, after it has become an executed contract, is well settled, and is fully sustained by the authorities cited in appellant's brief. Indeed, it does not appear that the declarations here in question even purported to come from Andrews, *as agent* of the plaintiffs, and may, therefore, have been nothing more than an expression of his individual opinion as to what the plaintiffs would do. Such, indeed, would seem to be the legitimate inference from the testimony of the defendant himself, for, in speaking of this matter, he uses this language: " That Col. Andrews informed him that the plaintiffs would not make warranty title as promised originally ; *that he did not know whether or not Col. Andrews spoke by authority from plaintiffs, but presumed he did, as he was their agent.*" He does not even say that Andrews *represented himself* as speaking for the plaintiffs, or that he inquired whether such was the fact. But it is manifest that he relied upon the presumption which, as we have seen, is not well founded, that because Andrews was the agent of the plaintiffs in making the original contract of the sale, his agency not only continued, but invested him with the power to rescind the sale or materially modify its terms.

The next question to be considered is, whether the covenants of the parties were mutual and dependent or independent. The first rule laid down by Mr. Sergeant Williams, in his elaborate note to the case of *Pordage* v. *Cole*, 1 *Wms. Saund.* 310, as a test by which to determine whether the covenants of the several parties to a contract are mutual and dependent or independent, is as follows: " If a day be appointed for payment of money, or part of it, or for doing any other act, and the day is to happen, or may happen, *before* the thing which is the consideration of the money or other act to be performed, an action may be brought for the money, or for not doing such other act *before* performance, for it appears that the party relied upon his remedy and did not intend to make the performance a condition precedent." This doctrine is recognized and applied in *Carter* v. *Carter*, 1 *Bail.* 217. Now, in the case under consideration, the money

was to be paid in installments—that is to say, the cotton, which constituted the consideration of the plaintiffs' promise to convey, was to be delivered in installments—a part of it long before the plaintiffs could be called upon to perform their part of the contract, and, according to the evidence of the defendant himself, all of it was to be delivered before the plaintiffs were bound to perform their covenant, for he says " the notes were first to be paid and then titles were to be made." The fact, if indeed such be the fact, that the plaintiffs had no title, or no valid title, to the land at the time the contract was made, or even at the time this action was commenced, cannot alter the case. Their contract was to convey with warranty, and, for aught that appears, (the declarations of Andrews being incompetent evidence,) this they were ready and willing to do upon the payment of the notes, as they are called. For, though having no title when the action was commenced, they might, for the purpose of enabling them to perform their covenant, have acquired title in time to enable them to do so, as in the case of *Davis* v. *Woodward*, 2 *Mills' Const. R.* 56.

Under the view which we have taken of the case, it becomes unimportant to consider the sufficiency of the proof of the outstanding paramount title. The judgment of the Circuit Court is set aside, and a new trial is ordered.

Willard, C. J., and McGowan, A. J., concurred.